ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 18 2016, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE
# COURT OF APPEALS OF INDIANA

Toddrick Ogburn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 18, 2016

Court of Appeals Case No.
82A01-1509-CR-1546

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82D02-1404-FB-418

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Toddrick Ogburn was convicted of possession of marijuana with intent to deliver, in an amount greater than ten pounds, a Class C felony. Ogburn appeals, raising two issues for our review, one of which we find dispositive: whether the trial court abused its discretion by admitting

evidence obtained in violation of the Fourth Amendment. Concluding the trial court abused its discretion, we reverse and remand.

# Facts and Procedural History[1]

On July 11, 2013, Officer Gregory Hosterman of the Evansville Police Department was dispatched to an apartment to investigate a report of a burglary. When Officer Hosterman arrived, he found the front door ajar and the first-floor window adjacent to the front door broken. Suspecting a burglary had occurred, he requested assistance to conduct a protective sweep of the residence. Once additional officers arrived, Officer Hosterman entered the residence, which appeared "ransacked." Transcript at 9. Large pieces of furniture were flipped over, the kitchen cabinets were open, and clothes were strewn everywhere. The officers found no one inside but noticed an odor of burnt marijuana.

Officer Hosterman exited the residence and requested a crime scene detective to take photographs. Detective Todd Lincoln arrived shortly thereafter and began processing the scene. While photographing the interior of the residence, Detective Lincoln discovered two baggies of suspected narcotics inside a large, opaque vase. The vase did not appear to be damaged, but Detective Lincoln was curious about a metal rod protruding from it. Detective Lincoln stood

---

[1] We heard oral argument in this case on March 31, 2016, at DePauw University. We commend counsel for their advocacy and thank DePauw's faculty, staff, and students for their participation and hospitality.

directly over the vase to photograph the inside of it, using the zoom function on his camera. The photograph shows what appears to be two baggies at the bottom of the vase. After reviewing the photograph, Detective Lincoln zoomed in further and took another photograph. That photograph clearly shows two baggies—one containing multicolored pills and another containing a white powder.

[4] Detective Lincoln exited the residence to inform Officer Hosterman of his discovery. Both officers re-entered the residence to look inside the vase. Officer Hosterman agreed the baggies likely contained narcotics and requested a narcotics detective. Detective Tony Johnson responded to the call. Detective Johnson also entered the residence to look inside the vase and agreed the baggies appeared to contain narcotics. Officer Hosterman then obtained a search warrant for the residence based upon the odor of burnt marijuana inside the residence and the baggies of suspected narcotics inside the vase. The search warrant authorized the police to search for:

> fruits, instrumentalities and evidence pertaining to the crime of dealing and/or possession of controlled substances, specifically cocaine and/or ecstasy and/or marijuana as more particularly described as follows:
>
> 1. Cocaine;
>
> 2. Ecstasy;
>
> 3. Marijuana;
>
> 4. Books, records, receipts, notes, ledgers and other

papers, and records of telephone call[s] recorded on a cellular telephone relating to the sale or distribution of controlled substances.

5. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks, and other items evidencing the obtaining, secreting, transfer, and/or concealment and/or expenditure of money;

6. Financial proceeds of dealing in controlled substances such as lawful U.S. Currency;

7. Indicia of occupancy, residency or ownership such as labels, identification cards, letters, or photographs;

8. Scales and other types of instruments used to weigh controlled substances;

9. Plastic baggies and other instruments commonly used in weighing or packaging controlled substances;

10. Computers and other electronic data storage and retrieval devices such as facsimile machines, cellular telephones and pagers which are capable of storing the records described in paragraphs [3 and 4]; and

11. Firearms.

Suppression Hearing Exhibit 1.

The police seized the following items from the residence pursuant to the search warrant: (1) thirty-four pills that field-tested positive for 3, 4-methylenedioxymethamphetamine ("MDMA") (also known as "ecstasy"); (2)

approximately ten grams of an unknown white powder; (3) two digital scales; (4) five cell phones; (5) assorted paperwork bearing the names "Toddrick Ogburn" or "Patricia Rockmore"; and (6) a key fob for a vehicle. Appellant's Appendix at 16; Tr. at 84. When an officer pressed a button on the key fob to determine if it belonged to a vehicle in the parking lot, a 2001 Chevrolet Tahoe parked approximately twenty-five feet from the building beeped.

[6] At some point during the search of the residence, a young man arrived, identified himself as Divarious Rockmore, and informed the officers that he lived in the apartment with his aunt, Patricia Rockmore. The officers determined the Tahoe was registered to Patricia Rockmore and called for a K-9 unit to walk the perimeter of the vehicle. The dog alerted to the presence of narcotics, and the police obtained a search warrant for the vehicle. Inside the vehicle they discovered two bundles of marijuana weighing over twenty pounds each. They also found two receipts—a Western Union receipt signed by "Toddrick Ogburn" as well as an invoice for vehicle repairs with the name "Todd Rick" at the top. State's Trial Exhibits 2, 3. Ogburn arrived sometime after the officers searched the Tahoe. According to the officers at the scene, he admitted the marijuana found in the Tahoe belonged to him.

[7] The State charged Ogburn with Count I, possession of MDMA with intent to deliver, within one thousand feet of a family housing complex, a Class A felony; Count II, possession of MDMA with intent to deliver, within one thousand feet of a public park, a Class A felony; Count III, possession of marijuana with intent to deliver, in an amount greater than ten pounds, a Class

C felony; Count IV, knowingly maintaining a building used for unlawfully keeping controlled substances, a Class D felony; and Count V, knowingly maintaining a vehicle used for unlawfully keeping controlled substances, a Class D felony.

[8]     Prior to trial, Ogburn filed a motion to suppress, which the trial court granted in part:

> Officer Hosterman initially entered the residence . . . after he had observed evidence of a break-in or burglary at the residence. This Court finds that this initial entry was justified by exigent circumstances, which included the need to determine if any suspects were in the residence and the need to determine if anyone located in the home was in need of aid.
>
> However, this Court finds that the second entry into the residence to document or photograph evidence was not justified by exigent circumstances.
>
> Law enforcement officers then obtained a search warrant for the residence based on observations made during the initial entry and observations made during the second entry. Probable cause to search the residence existed even without the evidence that the court has ordered suppressed because the search warrant was also based on Officer Hosterman's observations of a possible burglary and his testimony that he smelled marijuana upon his initial entry. . . .
>
> Therefore, any evidence first observed during the second entry into the home, including the alleged controlled substances found in the urn or vase, is ordered suppressed. Any other evidence found during the search of the residence is not suppressed.

App. at 83-84. Ogburn filed a second motion to suppress, requesting the trial court also suppress the evidence seized from the Tahoe. The trial court denied the motion. Thereafter, Ogburn filed a motion to dismiss Counts I, II, and IV, which the trial court granted in light of its ruling suppressing the evidence found inside the vase.

[9] A jury trial was held in August 2015. When the State offered the marijuana bundles into evidence, Ogburn objected, arguing the evidence was a product of the illegal search of the residence. The trial court affirmed its denial of Ogburn's second motion to suppress and admitted the marijuana over Ogburn's objection. Ogburn testified and wholly denied speaking to the police on July 11, 2013. He also denied ever living in the apartment the police searched and stated the Tahoe, as well as the marijuana, belonged to Patricia Rockmore (his ex-wife). The jury found Ogburn guilty of possession of marijuana with intent to deliver as a Class C felony and not guilty of maintaining a common nuisance with respect to the Tahoe. The trial court entered judgment of conviction for possession of marijuana with intent to deliver and sentenced Ogburn to seven years executed in the Department of Correction. This appeal followed.

# Discussion and Decision

## I. Standard of Review

[10] Ogburn contends the search of the Tahoe violated the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S.

Const. amend. IV. When a defendant challenges the constitutionality of a search following a completed trial, we consider the issue to be whether the trial court abused its discretion by admitting into evidence the items seized during the search. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). An abuse of discretion occurs "only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260. In reviewing the trial court's decision, we do not reweigh the evidence and consider conflicting evidence most favorably to the ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009). We defer to the trial court's factual determinations unless clearly erroneous, *id.*, but the constitutionality of the search is a question of law we consider de novo, *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

## II. Judicial Estoppel

In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he or she has "a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The State argues Ogburn may not challenge the search of the Tahoe on appeal because he denied having a possessory interest in the vehicle at trial. The State contends this "contradiction" implicates the doctrine of judicial estoppel. Brief of Appellee at 13. We have previously explained the doctrine as follows:

> Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding. Judicial estoppel is not intended to eliminate all inconsistencies; rather, it

is designed to prevent litigants from playing fast and loose with the courts. The primary purpose of judicial estoppel is not to protect litigants but to protect the integrity of the judiciary. The basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation.

*Morgan Cnty. Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008) (citations and internal quotation marks omitted), *trans. denied*. Our supreme court has observed "judicial estoppel in this state has been applied only in civil cases . . . ." *Smith v. State*, 765 N.E.2d 578, 582 (Ind. 2002). But even assuming judicial estoppel could apply in a criminal case, we conclude it does not apply in this case for two reasons.

[12] First, Ogburn did not prevail on the position he asserted at trial. We addressed this element of judicial estoppel in *Allstate Ins. Co. v. Dana Corp.*, 737 N.E.2d 1177 (Ind. Ct. App. 2000), *vacated in part on other grounds and summarily aff'd*, 759 N.E.2d 1049 (Ind. 2001). In *Allstate*, Dana (a manufacturer of automotive components) argued Allstate and several other insurance companies were contractually bound to indemnify Dana for costs arising from environmental cleanup. One of the issues Dana raised on appeal was whether the trial court erred in determining Dana was judicially estopped from arguing one of the policies contained aggregate limits of liability. The insurance companies maintained judicial estoppel applied because Dana initially argued one policy imposed no aggregate limits and later claimed a similar policy did contain such limits. We concluded,

> An essential part of the doctrine is that it prohibits a party from presenting a position contrary to one upon which it previously prevailed.
>
> * * *
>
> [A]lthough Dana's present contention concerning aggregate limits is contrary to its prior contention, it gained nothing from the prior contention. Rather, it lost its motion for partial summary judgment based upon its claim that there was no aggregate limit in the Hartford policy. Its position here, while inconsistent with its prior position, is not inconsistent with the ruling made by the trial court. Thus, there is no concern that Dana might twice succeed in this case on each of two inconsistent and contrary claims.

*Id.* at 1193. Based on the foregoing observations, we held the trial court erred when it determined judicial estoppel applied. *Id.* at 1193-94. Likewise, by finding Ogburn guilty of possession of marijuana with intent to deliver, the fact-finder necessarily rejected Ogburn's testimony and implicitly concluded Ogburn did have a possessory interest in the Tahoe.[2]

---

[2] The State maintains Ogburn did benefit from disclaiming his possessory interest in the Tahoe because the jury found him not guilty of maintaining a common nuisance. Yet, Ogburn was convicted of the more serious possessory offense, which the State prosecuted under a theory of constructive possession. A defendant constructively possesses an item when he has both the capability and the intent to maintain dominion and control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). The fact-finder may infer the defendant had the capability and intent to maintain dominion and control over the item from the simple fact that he had a possessory interest in the premises where the item was found. *Id.* If the defendant's possession is non-exclusive, however, the inference of intent must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the item and its presence. *Id.* at 174-75. Here, Ogburn told the police the marijuana belonged to him, and the search of the Tahoe revealed receipts bearing his name. At trial, Ogburn admitted he had driven the vehicle and had taken it to a mechanic for repairs. Based on this information, it is reasonable to infer Ogburn had a possessory interest in the Tahoe and constructively possessed the marijuana found inside of it. *Cf. Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010) ("Jury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable.").

Second, the State's judicial estoppel argument indirectly raises the issue of standing, an issue the State did not raise at the trial court level. In *Steagald v. United States*, 451 U.S. 204 (1981), the United States Supreme Court held the State lost its right to challenge the defendant's expectation of privacy where the State failed to raise the issue in the lower courts and had successfully argued the defendant's connection to the place was sufficient to establish his constructive possession of the contraband found therein. *Id.* at 208-11. Similarly, here, the State prosecuted Ogburn under a theory of constructive possession—and at no point suggested he lacked an expectation of privacy in the Tahoe—but now contends Ogburn is judicially estopped from asserting his Fourth Amendment rights due to testimony the fact-finder plainly discounted. We are not persuaded judicial estoppel should bar Ogburn's claim on appeal and proceed to the merits.

## III. Search of the Residence

The Fourth Amendment protects citizens against unreasonable searches and seizures by requiring a warrant based on probable cause. *Moore v. State*, 827 N.E.2d 631, 637 (Ind. Ct. App. 2005), *trans. denied*. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556

U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception applies when the exigencies of a situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable. *Kentucky v. King*, 563 U.S. 452, 460 (2011). Absent exigent circumstances, the threshold of a home may not reasonably be crossed without a warrant. *Payton v. New York*, 445 U.S. 573, 590 (1980).

[15] In deciding whether to issue a search warrant, the task of the issuing magistrate is to determine whether a sufficient factual basis exists to permit a reasonably prudent person to believe a search of the premises will uncover evidence of a crime. *Johnson v. State*, 32 N.E.3d 1173, 1176 (Ind. Ct. App. 2015), *trans. denied.* The magistrate's decision should be practical and made in light of all the circumstances set forth in the affidavit accompanying the warrant application. *Id.* The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding probable cause existed; that is, "whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause." *Id.* at 1177 (citation omitted). Where a search warrant was based on both legally obtained information and information obtained in contravention to the Fourth Amendment, the reviewing court evaluates the legitimacy of the warrant only in light of the legally obtained information. *Perez v. State*, 27 N.E.3d 1144, 1153 (Ind. Ct. App. 2015), *trans. denied*.

[16] Officer Hosterman obtained a search warrant for the residence based on the odor of burnt marijuana he noticed during his first warrantless entry and the

baggies of suspected narcotics he observed inside the vase during his second warrantless entry. Ogburn does not dispute Officer Hosterman's first entry into the residence was justified by exigent circumstances. Where, as here, police reasonably believe private property has recently been or is being burglarized, officers may enter without a warrant. *Bryant v. State*, 660 N.E.2d 290, 301 (Ind. 1995), *cert. denied*, 519 U.S. 926 (1996). However, "any search conducted because police reasonably believe a burglary is in progress or has just occurred is limited to areas in which an intruder could reasonably conceal himself." *Id.* The police "may not use the situation as an excuse to conduct a general search for evidence." *Id.*

[17] Here, the trial court ruled "any evidence first observed during the second entry into the home, including the alleged controlled substances found in the urn or vase" was suppressed but that "any other evidence found during the search of the residence" was not suppressed. App. at 84. While the State concedes the second entry was not justified by exigent circumstances, Br. of Appellee at 18,[3] the State argues the trial court erred in partially granting Ogburn's first motion to suppress because sufficient independent probable cause existed to support the issuance of a search warrant for the residence. More specifically, the State

---

[3] *See Middleton v. State*, 714 N.E.2d 1099, 1103 (Ind. 1999) ("[I]f an officer leaves the residence [where he was lawfully present], reentry is not justified in the absence of a warrant, the consent of the owner, or some other exception to the warrant requirement.").

contends the odor of burnt marijuana alone, noted during Officer Hosterman's first entry, established probable cause to search the residence.

[18] We addressed a similar situation in *Johnson*, 32 N.E.3d 1173. Johnson's probation was revoked after the police executed a search warrant at his cousin's residence and discovered a large amount of marijuana in Johnson's backpack. The police obtained the search warrant after entering the residence without a warrant and observing what appeared to be marijuana in plain view. Johnson argued the warrantless entry and search of his cousin's residence violated the Fourth Amendment. We held the search warrant was supported by probable cause even if the information obtained during the warrantless search was not considered. *Id.* at 1176-77.

[19] The affidavit contained the following facts known to the officer prior to conducting the warrantless search:

> 1. The officers received information that illegal drug activity was taking place at [Johnson's cousin's] address.
>
> 2. Prior to knocking on the door of the duplex, the officers observed a silver Chevy Impala parked in the driveway. "Based upon periodic surveillance of the duplex, over the course of the last 4–6 weeks, [the officer] knew this vehicle to come and go from the residence on a near daily basis."
>
> 3. When Johnson opened the door, the officer "immediately detected a very strong odor of burnt marijuana coming from within the residence."

> 4. Johnson refused to allow the officers inside the residence and told them that the residence belonged to his cousin . . . .

*Id.* at 1177. In addition,

> [W]hen Johnson answered the door, the officers believed that he was under the influence of marijuana because he was sluggish, and his eyes were red and droopy. Johnson told the officers that no marijuana was in the house but that he had been smoking spice. [The officer] testified that the odors of burning spice and burnt marijuana do not smell "any where near the same," and he did not believe Johnson's claim that he had been smoking spice.

*Id.*[4] Based on these facts, we concluded the officers "had sufficient information that would lead a reasonable person to conclude that Johnson had recently smoked marijuana and had committed possession of marijuana, and therefore, a fair probability existed that evidence of that crime would be found in [his cousin's] residence." *Id.* at 1177-78.

[20] Unlike the officers in *Johnson*, the officers in the present case had not received information that drug activity was taking place, nor spoken with any individuals who appeared to be under the influence of marijuana. Moreover, Officer Hosterman did not explain why he believed the odor originated from within Rockmore's apartment, as opposed to a neighbor's apartment. Although we have previously held the odor of burnt marijuana alone may constitute

---

[4] "Spice" refers to certain synthetic forms of marijuana. *See Elvers v. State*, 22 N.E.3d 824, 828 (Ind. Ct. App. 2014).

probable cause to search a vehicle, *State v. Hawkins*, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002), *trans. denied*, we conclude the odor of marijuana here failed to provide a substantial basis for concluding a search of the apartment would uncover evidence of dealing in controlled substances, *see Johnson*, 32 N.E.3d at 1176-77. An odor of burnt marijuana alone would not establish probable cause to support the extensive search warrant issued in this case.

[21] In addition, the seizure of the key fob clearly exceeded the scope of the search warrant. The Fourth Amendment provides, "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. An exact description is not required, but the items to be searched for must be described with some specificity. *Overstreet v. State*, 783 N.E.2d 1140, 1158 (Ind. 2003), *cert. denied*, 540 U.S. 1150 (2004). "A warrant conferring upon the executing officer unbridled discretion regarding the items to be searched is invalid." *Cutter v. State*, 646 N.E.2d 704, 710 (Ind. Ct. App. 1995), *trans. denied*.

[22] The search warrant in this case specifically lists "[i]ndicia of occupancy, residency or ownership" as an example of evidence pertaining to the crime of dealing and/or possession of controlled substances because such items "tend to establish ownership and control of the premises." Suppression Hr'g Ex. 1. The State maintains the key fob could be considered an "[i]ndicia of occupancy, residency or ownership" because "[f]inding which vehicle the key fob opened would lead to evidence of which person or persons occupied [the residence]."

Br. of Appellee at 20. However, the warrant defines "[i]ndicia of occupancy, residency or ownership" as items such as "labels, identification cards, letters, or photographs" or "utility bills and/or rent receipts." Suppression Hr'g Ex. 1. These examples properly limit the scope of "[i]ndicia of occupancy, residency or ownership" to items bearing a person's name or likeness. *See id.* Without this limitation, the officers could have seized virtually any item in the residence—because an examination of most, if not all, personal possessions would lead to evidence of who occupies a particular place. Because the key fob was not of the same character as "labels, identification cards, letters, or photographs" or "utility bills and/or rent receipts," the officers exceeded the scope of the warrant by seizing it.[5]

[23] In short, the search of the residence conducted pursuant to the search warrant violated the Fourth Amendment because the second warrantless entry to photograph evidence was not justified by exigent circumstances, and the odor of marijuana noted during the first entry, without additional facts, fails to provide a substantial basis for concluding a search of the apartment would uncover evidence of dealing in controlled substances. But even if the odor of burnt marijuana alone would establish probable cause to support the search warrant issued for the apartment, the seizure of the key fob clearly exceeded the

---

[5] An officer executing a valid search warrant may seize evidence not identified in the warrant if the item is in plain view and its incriminating nature is immediately apparent. *See Jones v. State*, 783 N.E.2d 1132, 1137 (Ind. 2003). The plain view exception does not apply here, however, because a key fob is neither apparently nor actually incriminating.

scope of the warrant. Either way, the piece of evidence that led the police to the Tahoe was obtained in violation of the Fourth Amendment.

## IV. Search of the Vehicle

The police requested a K-9 unit to walk the perimeter of the Tahoe because that vehicle beeped when the police activated the key fob discovered inside the residence. Although the police may conduct a canine sniff on a vehicle without obtaining a warrant, *see Illinois v. Caballes*, 543 U.S. 405, 409 (2005), and a positive canine alert may establish probable cause, *Florida v. Harris*, 133 S. Ct. 1050, 1058 (2013), the canine sniff in this case occurred as a result of a search that violated the Fourth Amendment. By the time the K-9 unit arrived, the police had already seized a receipt from the apartment for a security deposit paid by "Patricia Rockmore." State's Trial Ex. 18. The officers determined the Tahoe was registered to Patricia, and Patricia's nephew confirmed she lived in the apartment. Indeed, the warrant for the Tahoe states the request for a K-9 unit was "predicated upon the information utilized to secure the first search warrant for [the residence] earlier that day." App. at 96. Nonetheless, the State contends the trial court did not abuse its discretion by admitting the marijuana seized from the vehicle because the officers could have summoned a K-9 unit to walk around *all* the vehicles in the parking lot and could have obtained a warrant based on that information alone.

The fruit of the poisonous tree doctrine bars the admission of evidence "directly obtained by [an] illegal search or seizure as well as evidence derivatively gained as a result of information learned or leads obtained during that same search or

seizure." *Clark*, 994 N.E.2d at 266. To invoke the doctrine, a defendant must first prove a Fourth Amendment violation and then must show the evidence was a "fruit" of the illegal search. *Id.* But the exclusion of evidence is not the result of a simple "but for" test. *Jackson v. State*, 996 N.E.2d 378, 384 (Ind. Ct. App. 2013), *trans. denied*. The doctrine has no application where (1) "evidence [is] initially discovered during, or as a consequence of, an unlawful search, but [is] later obtained independently from activities untainted by the initial illegality," *Murray v. United States*, 487 U.S. 533, 537 (1988) (independent source); (2) "the information ultimately or inevitably would have been discovered by lawful means," *Nix v. Williams*, 467 U.S. 431, 444 (1984) (inevitable discovery);[6] or (3) "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint,'" *Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (citation omitted) (attenuation).[7] The burden is on the State to prove one of these exceptions applies. *Clark*, 994 N.E.2d at 266, 272.

---

[6] In *Nix*, the inevitable discovery exception applied because search parties were approaching the location of the victim's body *before* the defendant made incriminating statements revealing its location during an interrogation that violated the Sixth Amendment. *Id.* at 449-50.

[7] In *Wong Sun*, the following series of events took place: (1) federal agents arrested James Toy without probable cause; (2) Toy *immediately* told police he knew Johnny Yee was dealing in narcotics; (3) police went to Yee's residence and seized heroin in his possession; (4) Yee told police Toy and "Sea Dog" had provided the heroin; (5) Toy identified "Sea Dog" by his real name (Wong Sun); (6) police arrested Wong Sun without probable cause; and (7) Wong Sun was released but voluntarily returned *several days later* and confessed to dealing in narcotics. *Id.* at 473-76. The U.S. Supreme Court held Toy's statements were fruit of his illegal arrest that should have been suppressed but that Wong Sun's confession was not tainted:

> Wong Sun's unsigned confession was not the fruit of that arrest, and was therefore properly admitted at trial. On the evidence that Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the

[26] The State contends the independent source exception applies. The United States Supreme Court addressed this exception in *Murray v. United States*, recounting the facts of the case as follows:

> Based on information received from informants, federal law enforcement agents had been surveilling petitioner Murray and several of his co-conspirators. At about 1:45 p.m. on April 6, 1983, they observed Murray drive a truck and Carter drive a green camper, into a warehouse in South Boston. When the petitioners drove the vehicles out about 20 minutes later, the surveilling agents saw within the warehouse two individuals and a tractor-trailer rig bearing a long, dark container. Murray and Carter later turned over the truck and camper to other drivers, who were in turn followed and ultimately arrested, and the vehicles lawfully seized. Both vehicles were found to contain marijuana.
>
> After receiving this information, several of the agents converged on the South Boston warehouse and forced entry. They found the warehouse unoccupied, but observed in plain view numerous burlap-wrapped bales that were later found to contain marijuana. They left without disturbing the bales, kept the warehouse under surveillance, and did not reenter it until they had a search warrant. In applying for the warrant, the agents did not mention the prior entry, and did not rely on any observations made during that entry. When the warrant was issued—at 10:40 p.m., approximately eight hours after the initial entry—the agents immediately reentered the warehouse and seized 270 bales of

---

statement, we hold that the connection between the arrest and the statement had "become so attenuated as to dissipate the taint."

*Id.* at 491 (citation omitted).

marijuana and notebooks listing customers for whom the bales were destined.

487 U.S. at 535-36.

[27] The district court denied Murray's motion to suppress the evidence seized from the warehouse, and Murray was convicted of conspiracy to possess and distribute illegal drugs. He subsequently appealed, arguing the search warrant was tainted by the officers' prior warrantless entry into the warehouse. The Supreme Court held the Fourth Amendment does not require suppression of "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *Id.* at 537. However, the burden was on the State to show "the agents *would* have sought a warrant if they had not earlier entered the warehouse." *Id.* at 543 (emphasis added).

[28] The State contends "the officers *could* have summoned a dog to sniff the exteriors of vehicles in the parking lot and *could* have obtained a warrant based on that information alone," Br. of Appellee at 18 (emphasis added), but we have not located any evidence in the record suggesting the State *would* have conducted a canine sniff on every vehicle in the parking lot if they had not earlier searched the residence. As a result, the State has failed to meet its burden. The evidence seized from the Tahoe was derivatively gained as a result of information learned during an illegal search of the residence, and the independent source exception does not apply. Accordingly, the bundles of

marijuana are poisoned fruit, and the trial court abused its discretion by admitting them.[8]

# Conclusion

The trial court abused its discretion by admitting the bundles of marijuana obtained in violation of Ogburn's Fourth Amendment rights. We therefore reverse and remand with instructions that Ogburn's conviction be vacated.

Reversed and remanded.

Crone, J., and Altice, J., concur.

---

[8] Because we conclude the trial court abused its discretion by admitting the bundles of marijuana into evidence, we need not address whether admitting evidence of the weight of those bundles also constituted an abuse of discretion.