## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2018, 10:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patrick J. Smith
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David R. Deel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 31, 2018

Court of Appeals Case No.
59A01-1704-CR-939

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No.
59C01-1701-F2-27

**Crone, Judge.**

# Case Summary

[1] A jury convicted David R. Deel of level 2 felony dealing in methamphetamine, level 3 felony possession of methamphetamine, level 6 felony maintaining a common nuisance, and class B misdemeanor possession of marijuana, and found him to be a habitual offender. Deel now appeals, challenging the trial court's admission of evidence obtained pursuant to the search of his property. He contends that the warrant was not supported by probable cause and that the ensuing search therefore violated his constitutional protections against unreasonable search and seizure as set forth in the Fourth Amendment to the U.S. Constitution as well as Article 1, Section 11 of the Indiana Constitution. We affirm and remand with instructions to vacate Deel's conviction for level 3 felony possession of methamphetamine based on double jeopardy principles.

# Facts and Procedural History

[2] Detective Joshua Allen is an undercover drug enforcement detective with the Indiana State Police. In the course of his employment, he has worked on more than 500 drug investigations. In November 2016, he received information from a confidential informant ("CI") concerning Deel's involvement in selling methamphetamine ("meth"). Although he had successfully worked with the CI on several previous occasions, he declined to work with him at that time because CI was seeking leniency in another matter. A month later, he was approached by State Police Trooper Mitchell Weir, a former drug enforcement detective, who had received information concerning Deel's involvement in dealing large amounts of crystal meth with Chad White, a/k/a "Baldy." Tr.

Vol. 3 at 34-35. Detective Allen searched Deel's Facebook page and found information concerning Baldy. Around that same time, State Police Detective Shane Staggs also contacted Detective Allen and asked whether he was investigating any dealing activity by Deel.

[3] On January 1, 2017, a cooperative citizen ("Citizen") contacted Detective Allen and reported that he[1] had been purchasing meth from Deel twice a week for the preceding four months but that he was trying to clean up his life. At that time, Detective Allen had known Citizen for over twenty years and knew that Citizen had recently provided police with information that had led to the arrests of two people. Citizen identified Deel as his seller through a BMV photo and told the detective that Deel constantly smoked marijuana and/or used meth. He said that he always purchased meth from Deel at the same location in rural Orange County and that Deel would often front him the drug and tell him to go make some money and pay him later. Citizen described the property's layout as one trailer, with two popup campers behind it. According to Citizen, one of the campers was used for storing drugs and the other was essentially Deel's residence.

[4] After reporting this information to Detective Allen, Citizen accompanied the detective in an unmarked vehicle and showed him the way to the property. Detective Allen described the location as a "very remote area .... in the middle

---

[1] The record does not indicate Citizen's gender, and Detective Allen's affidavit in support of his request for a search warrant uses "he/she." We use masculine pronouns for simplicity's sake.

of nowhere." Tr. Vol. 4 at 40-41. As soon as they reached the location, the detective backtracked, dropped off Citizen, and returned to the property. He noted that the property was laid out exactly as Citizen had described, with one trailer in front and two popup campers behind it. As he approached the door of the trailer, he detected an increasingly pungent odor of marijuana. An unidentified man answered the door, and Detective Allen heard other voices inside. The detective expressed interest in purchasing one of about fifteen vehicles sitting on the property, but the man said that he was not the owner and instructed him to leave the property and not return.

[5] The next day, Detective Allen filed a five-page affidavit, seeking a warrant to search the property. The affidavit included maps and photographic exhibits depicting the trailer and campers to be searched. The trial court found probable cause and issued a search warrant. The officers executed the search warrant and discovered in one of the popup campers twenty-eight grams of crystal meth in a drawer next to Deel's birth certificate. They also found approximately one pound of marijuana, various paraphernalia such as digital scales and baggies, and a wallet containing Deel's Indiana photo identification card. Deel was present, arrested, and Mirandized. During his statement to the officers, he made several references indicating that he considered the camper "his camper." *See* Tr. Vol. 4 at 183 (Detective Staggs's trial testimony).

[6] The State filed an information charging Deel with level 2 felony dealing in methamphetamine, level 3 felony methamphetamine possession, level 6 felony marijuana possession, and level 6 felony maintaining a common nuisance. The

State amended the information to add a habitual offender count. Deel filed a motion to suppress the evidence obtained pursuant to the search warrant, which the trial court denied following a hearing, and the trial court admitted the evidence at trial over Deel's objection. The jury convicted Deel on all counts, except that it convicted him of marijuana possession as a lesser included, class B misdemeanor offense. The trial court entered judgment of conviction on all counts and sentenced Deel to concurrent terms totaling thirty years, with an additional twenty years for his habitual offender finding. In its sentencing order, the court vacated Deel's sentence for level 3 felony methamphetamine possession. Deel now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[7]     Deel challenges the trial court's admission of evidence obtained during the search of his property. We review a trial court's decision to admit or exclude evidence using an abuse of discretion standard. *Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id*. In conducting our review, we neither reweigh evidence nor judge witness credibility. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). Where the issue concerns the constitutionality of a search or seizure, it presents a question of law, which we review de novo. *Id*. Similarly, we review determinations of reasonable suspicion and probable cause using a de novo standard. *J.K. v. State*, 8 N.E.3d 222, 228 (Ind. Ct. App. 2014).

# Section 1 – A substantial basis supports the trial court's finding of probable cause for the search warrant under the Fourth Amendment.

[8] According to the Fourth Amendment to the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment's fundamental purpose is to protect a person's reasonable expectation of privacy. *Holder v. State*, 847 N.E.2d 930, 935-36 (Ind. 2006). "A principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter a residence for the purposes of search or arrest." *State v. Straub*, 749 N.E.2d 593, 597 (Ind. Ct. App. 2001).

[9] Deel challenges the sufficiency of the search warrant affidavit to support the trial court's finding of probable cause to issue the warrant. "Probable cause to search exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *State v. Hawkins*, 766 N.E.2d 749, 751 (Ind. Ct. App. 2002), *trans. denied*. "In deciding whether to issue a search warrant, the task of the issuing magistrate is to determine whether a sufficient factual

basis exists to permit a reasonably prudent person to believe a search of the premises will uncover evidence of a crime." *Ogburn v. State*, 53 N.E.3d 464, 471-72 (Ind. Ct. App. 2016), *trans. denied*. "The magistrate's decision should be practical and made in light of all the circumstances set forth in the affidavit accompanying the warrant application." *Id.* at 472.

[10] In conducting our review, "our duty 'is simply to ensure that [there was] a substantial basis' for finding probable cause." *Watkins v. State*, 85 N.E.3d 597, 603 (Ind. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "We owe 'great deference' to the initial probable-cause determination, and will not invalidate warrants by interpreting probable cause affidavits 'in a hypertechnical, rather than a commonsense, manner.'" *Id.* (quoting *Gates*, 462 U.S. at 236)).

[11] Indiana Code Section 35-33-5-2(b) requires that where a search warrant affidavit is based on hearsay, the affidavit must either:

> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

The reliability of such hearsay can be established in various ways, including where: "(1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3)

some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted." *Newby v. State*, 701 N.E.2d 593, 598 (Ind. Ct. App. 1998).

[12] Deel asserts that the State failed to establish the reliability of Citizen's statements and therefore failed to tie him to the property to be searched. In the search warrant affidavit, Detective Allen averred the following with respect to Citizen:

> Citizen had proven his[2] credibility the previous day when he provided information to the Lawrence County police department that led to the arrest of 2 wanted subjects. I have known Citizen for over 20 years. When I met with Citizen he indicated the following:
>
> 1. He wanted to get clean from methamphetamine. He stated he had a daughter and it was time for him to clean their life up.
>
> 2. He had been purchasing methamphetamine from DAVID DEEL for over 4 months. Usually on a frequency of twice a week. He indicated Deel was "never out of meth."
>
> 3. He indicated that he felt the only way to get clean was to have the people arrested that were dealing drugs to him.
>
> 4. He indicated he did not want anything in return for the information. He felt like it "was the right thing to do."
>
> 5. He stated that approximately 4 months ago he met David Deel and Deel gave them ½ ounce of crystal methamphetamine

---

[2] For consistency, we identify Citizen as previously indicated.

and told he (sic) to "go make some money" and he could pay Deel back later.

6. He indicated that he had met Deel at the same residence every time he had purchased methamphetamine from Deel.

7. He indicated [he was] acquiring between 7 and 28 grams from Deel during every purchase of methamphetamine.

8. He indicated that Deel always had drugs and usually had several ounces in his "camper."

9. He described the property as a single wide trailer with two campers in the backyard.

10. He indicated Deel always had marijuana and "DAB" (extracted THC) for sale.

11. He stated that Deel was always smoking marijuana and using methamphetamine.

12. He indicated that as soon as you got close to the trailer or camper you could smell the marijuana.

13. He indicated that another person lived in the trailer and "Deel hid out in the pop up camper" and stored stuff in the other camper and in the trailer.

14. He stated that Deel had a partner that went by Baldy. (I had him look on Deel's Facebook and they identified "Chad White" as Baldy, information matching that of Trooper Weir.)

15. He indicated that Deel did not drive anywhere and did not have a Driver's license. I confirmed this through a DMV Records Check.

16. I showed Citizen a DMV photograph of David Deel

01/18/1966, and he indicated that was the David Deel they had been purchasing methamphetamine from the past 4 months.

17. He stated that Deel kept scales, baggies and other packaging equipment in the pop up camper. He indicated that Deel kept a lot of his product in the other camper.

18. He indicated [he] would pay $800 for a half ounce or $250 for 1/8 ounce. He indicated that it cost $50 for 1 gram of the "DAB[.]"

Citizen suggested that he show me the residence in which he always purchased the drugs from Deel. Citizen guided me through the country from Lawrence County to 3886 N Rollin Road, West Baden Springs, Indiana. The property was exactly how the informant described it.

….

I believe David Deel to be involved in an ongoing criminal enterprise of dealing methamphetamine. I believe David Deel to be operating this criminal enterprise from 3886 N Rollin Road, West Baden, Indiana. Citizen gave information that was reliable and credible the previous day. Citizen asked for no leniency on criminal charges or monetary reimbursement. Citizen made statements against his own penal interest indicated (sic) he had been involved in the sale of methamphetamine for over 4 months. Citizen gave information which corroborated information previously provided to Trooper Weir. Lastly, I was able to corroborate the information of marijuana being located on the property by the odors emitted from the front door of the trailer.

Appellant's App. Vol. 2 at 13-15.

[13]   With respect to Deel's argument concerning Citizen's reliability, the search warrant affidavit specifies that Detective Allen has personally known Citizen for over two decades, that he also knows Citizen to have recently provided accurate information leading to the arrests of two other persons, and that Citizen's statements corroborated information he had already received from three separate sources, two of whom were law enforcement officers and one of whom was a CI with whom the detective had a history. The affidavit also indicates the specificity of Citizen's information in terms of the physical layout of the trailer and campers, the marijuana smell emanating from one of the structures, Deel's lack of a driver's license, and Deel's pricing scheme, which was consistent with the detective's knowledge as an expert in drug enforcement. Also lending reliability are Citizen's admissions against his penal interest that he had purchased (and was urged to sell) meth numerous times over the preceding four months.[3] *See Houser v. State*, 678 N.E.2d 95, 100 (Ind. 1997) ("Declarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Ind. Code § 35-33-5-2(b)(1)."). As it concerns Deel's connection to the property, Citizen stated that he always purchased the meth from Deel at the same location. Citizen not only described the property accurately but also directed the detective to it. The remote location indicates that it is not property that ordinary travelers would pass on a regular basis but is a place that one visits with a specific purpose.

---

[3] Unlike CI, Citizen did not request leniency in exchange for information that he provided concerning Deel.

Citizen had frequented the property recently and regularly for the specific purpose of purchasing meth from Deel. When Detective Allen approached the trailer, he smelled marijuana, an illegal substance, and thus corroborated the information through his own observations.

[14] In short, Citizen gave detailed information that tied Deel to the sale of meth at the address listed in the affidavit. Detective Allen's personal observations during his visit confirmed that illegal drugs were present on the property. "In other words, the warrant was based on a 'practical, commonsense decision' that there was 'a fair probability that contraband or evidence of a crime' would be found" on the property. *Watkins*, 85 N.E.3d at 604 (quoting *Query v. State*, 745 N.E.2d 769, 771 (Ind. 2001)). Thus, the affidavit was sufficient to support the trial court's finding of probable cause to search the property.[4]

## Section 2 – The totality of the circumstances supports the officers' execution of the search warrant under Article 1, Section 11 of the Indiana Constitution.

[15] Deel also contends that he was subjected to unlawful search and seizure based on Article 1, Section 11 of the Indiana Constitution. While its language tracks that of the Fourth Amendment, Indiana's search and seizure clause is subject to a different analysis, that is, we evaluate the reasonableness of the police conduct under the "totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356,

---

[4] Because we hold that the affidavit sufficiently supports the trial court's finding of probable cause to search Deel's property, we need not address his claim that the good faith exception is unavailable to the State.

359-60 (Ind. 2005). Subject to other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: "(1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." *Id.* at 361.

[16] We first address the degree of intrusion. The searched property was Deel's residence, and therefore it was entitled to the highest protection. *Carpenter v. State*, 18 N.E.3d 998, 1002 (Ind. 2014). Police served the search warrant and found Deel in the main trailer. They kicked open the door of his popup camper and searched inside, finding large quantities of meth and marijuana, as well as paraphernalia. The degree of intrusion was substantial and weighs in Deel's favor.

[17] High degree of intrusion notwithstanding, we must weigh it considering the remaining *Litchfield* factors. Deel admits that police had some, "maybe even a fairly high degree of concern, suspicion, or knowledge," that he was engaged in criminal behavior. Appellant's Br. at 32. However, he claims that it is "impossible to say that [Detective] Allen's degree of concern, suspicion, or knowledge that a violation had occurred *at the Rollin Road property* was very high." *Id.* at 33. We disagree. As previously discussed, in concluding that illegal activity was occurring on the property, Detective Allen relied not only on Citizen's detailed descriptions of and specific directions to the remote property

but also on his own commonsense observations. The high degree of concern, suspicion, or knowledge weighs in favor of the reasonableness of the search.

[18] As for the extent of law enforcement needs, we note that Deel's illegal activities had been on Detective Allen's radar through three independent sources prior to Citizen's appearance, i.e., one CI with whom the detective had a history, and two law enforcement officers. From the information gathered, Deel was believed to be dealing large quantities of crystal meth with his cohort, Baldy. It was reported that Deel's source was based in Indianapolis. In other words, Deel was not a lone actor but was believed to be involved in a meth dealing enterprise comprising a significant swath of central to southern Indiana. Simply put, law enforcement needs were high. Based on our balancing of the foregoing factors, we conclude that the search was reasonable.

## Section 3 – Double jeopardy principles require vacatur of Deel's conviction, not merely his sentence, for level 3 felony methamphetamine possession.

[1] Finally, we address sua sponte the trial court's entry of judgment of conviction against Deel on both level 2 felony dealing in methamphetamine and level 3 felony methamphetamine possession. Because double jeopardy violations implicate fundamental rights, we may review them sua sponte. *Hayden v. State*, 19 N.E.3d 831, 842 (Ind. Ct. App. 2014), *trans. denied* (2015). In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our supreme court set forth the statutory elements and actual evidence tests to be applied to double jeopardy claims made pursuant to the Indiana Constitution. Where, as here, "no constitutional

violation has occurred, multiple convictions may nevertheless violate the 'rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Montgomery v. State*, 21 N.E.3d 846, 865 (Ind. Ct. App. 2014), *trans. denied* (2015). One such category is "[c]onviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring).

[2] Here, the State charged Deel with both dealing in and possession of methamphetamine. The dealing count is phrased in term of Deel's "knowing[] or intentional[] possess[ion] with intent to deliver methamphetamine ... having a weight of at least 10 grams." Appellant's App. Vol. 2 at 25. His possession count is phrased in terms of his "knowingl[] or intentional[] possess[ion] [of] methamphetamine ... weighing at least 28 grams." *Id*. In pronouncing sentence, the court stated, "COUNT 2: POSSESSION OF METHAMPHETAMINE; Court vacates this sentence." *Id*. at 208. Yet, the court had already expressly indicated that it was entering judgment of conviction on all counts. *Id*. at 206.

[3] We believe that the trial court intended to address the double jeopardy implications of Deel's convictions for both dealing in and possession of methamphetamine by vacating his sentence. In *Kovats v. State*, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013), another panel of this Court emphasized that where the trial court formally enters judgment of conviction on a jury's guilty verdict,

simply vacating the sentence or merging convictions for purposes of sentencing is insufficient to remedy a double jeopardy violation. Rather, the court must reduce either conviction to a less serious form of the same offense that will eliminate the violation or vacate the conviction for the offense with lesser penal consequences. *Richardson*, 717 N.E.2d at 54. As such, we remand with instructions to vacate Deel's conviction for level 3 felony methamphetamine possession. In all other respects, we affirm.

[4] Affirmed and remanded.

Robb, J., and Bradford, J., concur.