May, Judge.
Louis Bell appeals his convictions of Level 4 felony unlawful possession of a firearm by a serious violent felon,[1] Level 5 *235 felony possession of a narcotic drug,[2] Level 5 felony possession of cocaine,[3] Class B misdemeanor possession of marijuana,[4] and Class C misdemeanor possession of paraphernalia.[5] Bell asserts his convictions must be overturned because the trial court admitted evidence that was obtained unconstitutionally.[6] We affirm.
Facts and Procedural History
On September 7, 2015, around 1:00 a.m., Officer Justin Gough of the Indianapolis Metropolitan Police Department (IMPD) observed a man, later identified as Bell, riding a bike and' trailing another bike by holding its handlebars. Bell was “rapidly just kind of looking around the area constantly looking if someone is watching or if someone is coming towards” him. (Tr. at 73.) Officer Gough explained this behavior is called “scanning.” (Id. at 14.) State law requires a bike operated at night have a red rear light and a white front light. Ind. Code § 9-21-11-9. The bike Bell was riding did not have this lighting.[7] Officer Gough parked down the road in front of Bell and waited for him to approach. When Bell was around twenty feet away, Officer Gough asked Bell, “Hey, do you mind if I talk to you for a minute?” (Tr. at 79.) Bell replied, ‘What’s up?” and rode over to Officer Gough. (Id. at 80.)
When Bell approached Officer Gough, Bell was “still scanning and looking around, sweating. His heart was beating extremely fast.” (Id. at 81.) Officer Gough asked Bell for his name. Officer Gough “r[a]n [Bell’s name] through Control” and learned Bell did not have any warrants. (Id. at 115.) Officer Gough asked Bell if he was in possession of anything illegal, and Bell said he was not.
Officer Gough observed a suspicious bulge in Bell’s front pocket. When he asked Bell about it, Bell “looked away, started scanning again, and then didn’t answer [Officer Gough’s] question.” (Id. at 90.) For “[o]fficer safety,” (id. at 123), Officer Gough “grabbed [Bell’s] hands to conduct an outer clothes patdown.” (Id. at 90.) The bulge was a gun. Officer Gough asked Bell if he had a permit to carry the gun, and Bell said he did not.
Officer Gough placed Bell under arrest and conducted a search incident to arrest. Officer Gough found a screwdriver with a “removable cap.” (Id. at 95.) In the cavity under the cap, Officer Gough found “a white plastic baggie [he] believed to be [sic] cocaine [and] another clear plastic bag with a brown rock-like substance [he] believed to be heroin.” (Id.) In a cigarette pack, Officer Gough found a “glass smoking pipe ... and then two small burnt marijuana cigars.” (Id. at 98-99.)
The State charged Bell with Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 5 felony possession of a narcotic drug, Level 5 felony possession of cocaine, Class B misdemean- or possession of marijuana, and Class C misdemeanor possession of paraphernalia. Bell filed a motion to suppress the fruits of Officer Gough’s search arguing his encounter with Officer Gough was not consensual and, as such, the pat-down violated his rights under the federal and Indiana constitutions. The trial court denied the mo *236 tion. Following a bench trial, the- court convicted Bell of all charges and sentenced him accordingly.
Discussion and Decision
 Bell did not seek interlocutory review of the denial of his motion to suppress but instead appeals following trial. The issue he raises is therefore “appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.” Washington v. State, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). Cur standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. Lundquist v. State, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005). We-do not reweigh the evidence, and we consider conflicting evidence most "favorable to the trial court’s ruling. Id. However, we must also consider the uncontested evidence favorable to the defendant. Id.
“Although a trial court’s determination of historical facts .is entitled to deferential review, we employ a de novo standard when, reviewing the trial court’s ultimate determination of reasonable suspicion and probable cause.” Lindsey v. State, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), trans. denied.
In other'words, when a trial court has admitted evidence alleged to have been discovered as the result of an illegal search or seizure, we generally will assume the trial court accepted the evidence presented by the State and will -not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of a search or seizure.
Johnson v. State, 992 N.E.2d 955, 957 (Ind. Ct. App. 2013), trans. denied.
1. Initial Stop[8]
 Bell asserts that although Officer Gough “was within his right to stop Bell for the bicycle violátion,” (Appellant’s Br. at 19), he was actually investigating whether the second bike was stolen.[9] However, as the State notes, even if the traffic stop was pretext to investigate the possibility the second bike was stolen, Indiana law allows pretextual traffic stops when the officer has observed a traffic violation. See Mitchell v. State, 745 N.E.2d 775, 787 (Ind. 2001) (pretextual traffic stops not unconstitutional “even if the officer may have an ulterior motive of furthering an unrelated criminal investigation”).
 In Indiana, “[w]henever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement *237 officer may detain that person for a time[.]” Ind. Code § 34-28-5-3. “[A] traffic stop and limited search is permissible where an officer has at least reasonable suspicion that a traffic law, or other law, has been violated.” Sanders v. State, 989 N.E.2d 332, 335 (Ind. 2013), reh’g denied.
In the middle of the night, Bell was riding a bike that did not have the lights required by law for a bike to be ridden at night.[10] Officer Gough thus had reasonable suspicion to detain Bell for the traffic violation. See, e.g., State v. Keck, 4 N.E.3d 1180, 1184 (Ind. 2014) (“If an officer observes a driver commit a traffic violation, he has probable cause—and thus also the lesser included reasonable suspicion [required for a Terry stop]—to stop that driver.”); see also State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006) (even a minor traffic violation “creates probable cause to stop the driver”). Thus, Bell has not demonstrated the trial court erred in determining the initial stop was constitutional.
2. Pat-Down Search
The parties disagree whether Offi: cer Gough’s pat-down of Bell violated our federal and state constitutions. We begin with the federal analysis.

A. Fourth Amendment

 The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. U.S. Const, amend. IV. To deter State actors from violating that prohibition, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. Clark v. State, 994 N.E.2d 252, 260 (Ind. 2013). The State has the burden of demonstrating, the admissibility of evidence collected during a seizure or search. Id.
The trial court concluded Officer Gough had reasonable suspicion to pat Bell down for weapons. Bell argues Officer Gough did not have reasonable suspicion to conduct a pat-down search because Bell cooperated with Officer’ Gough’s request to talk. Bell asserts his sweating and fast heart-rate could have been due to his bike-riding. The State asserts the “pat-down was proper under the Fourth Amendment” because Officer Gough had a reasonable belief his safety was in danger. (Appellee’s Br. at 16.)
• To conduct a pat-down during a Terry stop, an “officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “In addition, a police officer ‘justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,’ is entitled to conduct a limited patdown [sic] search of the suspect’s outer clothing to search for a weapon.” Jackson v. State, 669 N.E.2d 744, 747 (Ind. Ct. App. 1996) (quoting Terry, 392 U.S. at 24, 88 S.Ct. 1868).
Here, the encounter occurred after 1:00' a.m. in a high-crime area, Bell had a suspicious bulge in his pocket, and Bell did not answer Officer Gough’s question about the bulge in his pocket. Officer Gough had observed Bell was “still scanning and looking around, sweating [and h]is heart was *238 beating extremely fast.” (Tr. at 81.) Because Bell did not answer Officer Gough’s question regarding the bulge in his pocket, Officer Gough believed Bell was “hiding something or being evasive.” (Id. at 90.) Under these circumstances, we conclude it was reasonable for Officer Gough to be concerned for his own and the public’s safety.[11] The pat-down search was not a violation of Bell’s Fourth Amendment rights, and the trial court did not err in admitting the handgun discovered during the pat-down or the other evidence seized during the search incident to arrest. See Scisney v. State, 55 N.E.3d 321, 325 (Ind. Ct. App. 2016) (pat-down “constitutionally permissible” when Scisney did not respond to a question regarding whether he had any weapons), trans. denied.

B. Article 1, Section 11

 The language of Article 1, Section 11 tracks the Fourth Amendment; however, “Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure.” Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). Instead, the legality of a search “turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances.” Id. Reasonableness is determined by balancing: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion imposed by the search; and (3) the extent of law enforcement needs. Id. at 361.
The trial court concluded the “limited pat down search of [Bell] did not violate [] Article I, Section 11 of the Indiana Constitution.” (App. Vol. II at 86.) Bell argues he should not have been patted-down because the stop should not have continued after Officer Gough found Bell did not have active warrants. In support, he cites State v. Richardson, 927 N.E.2d 379, 384 (Ind. 2010), in which our Indiana Supreme Court held observation of an “unusual bulge” is not enough to provide reasonable suspicion. The facts here are distinguishable because Officer Gough also observed Bell was nervous, he was scanning the area, and he did not answer Officer Gough’s question about the bulge in his pocket.
Applying the Litchfield factors to the facts, we hold the warrantless search did not violate Article 1, Section 11 of the Indiana Constitution. The degree of suspicion was high because Bell’s bikes did not have the required lighting and Officer Gough observed Bell “scanning and looking around, sweating. His heart was .beating extremely fast.” (Tr. at 81.) When Officer Gough asked Bell about the bulge in his pocket, Bell “looked away, started scanning again, and then didn’t answer [Officer Gough’s] question.” (Id. at 90.) The intrusion into Bell’s privacy was minimal as it was merely “an outer clothes pat-down.” (Id.) Finally, the law enforcement needs were high given the circumstances *239 leading up to the pat-down. Officer Gough was justified to feel concern for officer and public safety. Under the totality of circumstances, we conclude the pat-down was reasonable. As such, Bell’s Article 1, Section 11 rights were not violated and the admission of evidence found thereafter in the search was not error.[12] See Johnson v. State, 38 N.E.3d 658, 664 (Ind. Ct. App. 2015) (“outer-clothing pat down” of non-compliant defendant was not a violation of Section 11), trans. denied.
Conclusion
Officer Gough had reasonable suspicion to stop Bell due to the traffic violation created by the lack of lights on the bicycle. Once stopped, neither Bell’s Fourth Amendment nor Article 1, Section 11 rights were violated by the pat-down search. Thus, admission of the evidence was not an abuse of discretion. Accordingly, we affirm Bell’s convictions.
Affirmed.
Kirsch, J., concurs.
Robb, J., dissents with separate opinion.

. Ind. Code § 35-47-4-5 (2014).

. Ind. Code § 35-48-4-6 (2014).

. Ind. Code § 35-48-4-6 (2014).

. Ind. Code § 35-48-4-11 (2014).

. Ind. Code § 35-48-4-8.3 (2015).

. We held oral argument on this matter on March 2, 2017, at the Lafayette campus of Ivy Tech Community College. We thank counsel for their advocacy and the students and staff at Ivy Tech for their warm welcome.

. Nor did the bike he was trailing have lights.

. The parties disagree whether the interaction between Bell and Officer Gough began as'a consensual encounter, which would "not . compel Fourth Amendment analysis.” McNeal v. State, 62 N.E.3d 1275, 1280 (Ind. Ct. App. 2016), The trial court concluded the "encounter between [Bell] and Officer Gough, leading up to the 'pat down' search, was a consensual one[,]” (App, Vol, II at 86.) Thereafter, the court concluded that "even if the encounter was not consensual ... Officer.Gough had reasonable suspicion to stop . [Bell], based upon the totality of the circumstances.”; (Id.) Even if we presume Bell approached Officer Gough voluntarily, the consensual nature of the stop quickly evolved into an investigatory stop. See Combs v. State, 851 N.E.2d 1053, 1059 (Ind. Ct. App, 2006) (consensüal stop evolved into an investigatory stop on request for identifying information), trans. denied. Thus, we turn to whether Officer Gough had at least reasonable suspicion to stop Bell.

. Bell asserts Officer Gough was on a "fishing expedition” in order to ”target[] citizens in bad neighborhoods.” (Appellant’s Br. at 25.) Bell points to no evidence to support his assertion Officer Gough was "targeting citizens;” nor did we see any such evidence in our review of the record,

. Officer Gough acknowledged Bell had a white desk light clipped to the back of his shirt, but that did not satisfy the requirement of the statute. See- Ind. Code § 9-21-11-9 (requiring red back light and white front light on bike operated at night).

. The dissent notes the determination of sufficient authorization to conduct a lengthier traffic stop and a patdown search is “fact sensitive." Op. at ¶ 23. We agree. We also agree that reasonable suspicion cannot be created solely by Bell's presence in a high-crime area, see Clark, 994 N.E.2d at 266, that we must be careful placing too much weight on a citizen’s nervousness when confronted by police, see Pinner v. State, 74 N.E.3d 226, 233 (Ind. 2017), and that the law requires a police officer to have particularized suspicion that a person is armed and is a threat to safety. See Patterson v. State, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011). We disagree with the dissent about the implications of those statements of law for the case at hand. Bell’s commission of a traffic infraction gave Officer Gough probable cause to stop Bell, and as we explained above, the other circumstances provided Officer Gough particularized suspicion that Bell posed a threat to Officer Gough’s safety.

. Bell also claims the State is using his possession of a screwdriver as an after-the-fact justification for Officer Gough’s decision to search him for officer safety. (Appellant’s Br. at 23.) In support, he cites Webb v. State, 714 N.E.2d 787, 789 (Ind. Ct. App. 1999), in which the State "imputed to [the officer] a new theory for the stop despite [the officer’s] own testimony as to why he stopped Webb.” Officer Gough’s probable cause affidavit indicates the reason for the stop as “the city ordinance infraction, as well as suspicious behavior.” (App. Vol. II at 23.) Officer Gough testified during the suppression hearing that his reason for conducting the pat-down was because Bell was acting nervous, "had a bulge in his front right pocket as well as a screwdriver in his rear right pocket,” (Tr. at 26), and would not answer questions about whether that bulge was a weapon. Thus, the State did not impute to Officer Gough a justification that was not advanced by Officer Gough himself, and Webb is not relevant.