

**FILED**

Jun 28 2018, 7:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
KEATING & LAPLANTE, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin Shawn Carter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 28, 2018

Court of Appeals Case No.
17A-CR-3024

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1612-F2-7290

**Bailey, Judge.**

# Case Summary

A jury convicted Kevin Shawn Carter ("Carter") of Dealing in a Narcotic Drug, as a Level 2 felony,[1] and Dealing in Methamphetamine, as a Level 2 felony.[2] Thereafter, Carter admitted to being a habitual offender.[3] Carter now appeals.

We affirm.

# Issues

Carter presents the following two restated issues:

I. Whether the trial court abused its discretion by admitting evidence obtained from a search of a cell phone because the underlying warrant was impermissibly general, allowing an exploratory search; and

II. Whether the trial court committed fundamental error by admitting testimony from an officer who opined that the amount of heroin seized was a dealer-level quantity.

# Facts and Procedural History[4]

---

[1] Ind. Code § 35-48-4-1(a)(2), -1(e)(1).

[2] I.C. § 35-48-4-1.1(a)(2), -1.1(e)(1).

[3] I.C. § 35-50-2-8.

[4] We heard oral argument on this case on June 7, 2018, at Ivy Tech Community College in Sellersburg, Indiana. We thank Ivy Tech and its guests from the Sherman Minton American Inn of Court for their hospitality, and we thank counsel for their advocacy.

[4] After seeing a Ford Mustang cross the center line several times, Deputy Brandon Mattingly ("Deputy Mattingly") of the Vanderburgh County Sheriff's Department conducted a traffic stop. Deputy Mattingly approached the vehicle and observed the front passenger—Carter—making furtive movements and appearing to place an item under his seat. Deputy Mattingly then spoke with the driver, Tiffani Colschen ("Colschen"). At some point, Carter stated that he co-owned the vehicle, and both Colschen and Carter consented to a vehicle search. During the ensuing search, Deputy Mattingly found a bag between the front seats. Inside, there was a container holding a syringe and a spoon. Below the container there were several plastic bags that appeared to contain drugs; subsequent lab testing revealed that the bags contained, in the aggregate, approximately 205 grams of methamphetamine and approximately 27.5 grams of heroin. Carter and Colschen were arrested and their cell phones were confiscated. The police later obtained a warrant to search the cell phones.

[5] Carter was brought to trial on charges of Dealing in a Narcotic Drug and Dealing in Methamphetamine, both as Level 2 felonies. The State also alleged that Carter was a habitual offender. Before the trial began, Carter moved to suppress evidence obtained from the search of his cell phone; the trial court denied Carter's motion. At trial, Carter objected to the admission of cell phone evidence, and the court held a conference outside the presence of the jury. At the conference, the State tendered an exhibit containing several pages of text messages. The court determined that eight messages were admissible, and that, among the eight, any messages from third parties were admissible only to give

context to Carter's messages.  The State prepared a redacted exhibit containing the eight admissible text messages.  *See* State's Ex. 23-1.  Those messages—later admitted with a limiting instruction—indicated that Carter met with three individuals in the hours preceding the traffic stop, and had instructed one individual to pull around to the back, behind his Mustang, to avoid being seen.

[6] The State's evidence also included testimony from Detective James Budde ("Detective Budde"), who was assigned to the local drug task force and had encountered heroin and methamphetamine hundreds of times as a police officer.  Detective Budde opined that the quantity of heroin seized was "typical of a dealer amount," to which Carter did not object.  Tr. Vol. IV at 224.

[7] The jury found Carter guilty of the dealing counts, and Carter admitted to being a habitual offender.  Following a sentencing hearing, the trial court imposed an aggregate sentence of thirty-six years in the Indiana Department of Correction.

[8] Carter now appeals.

# Discussion and Decision

## Cell Phone Records

[9] Carter frames his argument as a challenge to the denial of his motion to suppress evidence, but Carter did not seek interlocutory review of that denial. We therefore treat Carter's argument as a challenge to the admission of the evidence.  *See Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).  "The trial court has broad discretion to rule on the admissibility of evidence."  *Thomas v.*

*State*, 81 N.E.3d 621, 624 (Ind. 2017). Ordinarily, we review evidentiary rulings for an abuse of discretion, evaluating whether the court's ruling was "clearly against the logic and effect of the facts and circumstances." *Id.* "However, when a challenge . . . is predicated on the constitutionality of the search or seizure of evidence, it raises a question of law that we review *de novo*." *Id.*

[10] Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution proscribe unreasonable searches of "persons, houses, papers, and effects."[5] Moreover, under the Fourth Amendment, "reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995).

[11] There are a few "specifically established and well-delineated exceptions" to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). Among those exceptions "is a search incident to a lawful arrest," *Arizona v. Gant*, 556 U.S. 332, 338 (2009), whereby the Fourth Amendment permits "a warrantless search of the arrestee's person and the area 'within his immediate control,'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Under this exception, officers generally may search the

---

[5] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Using nearly identical language, Article 1, Section 11 of the Indiana Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

containers they encounter. *See United States v. Robinson*, 414 U.S. 218, 236 (1973) (determining that the Fourth Amendment permitted a search of a package of cigarettes that was found during a search incident to arrest); *cf. Garcia v. State*, 47 N.E.3d 1196, 1205 (Ind. 2016) ("Under Article 1, Section 11, opening a container found on the person of an arrestee in the course of a search incident to [a]valid arrest will not automatically be deemed unreasonable.").

[12]     However, as the United States Supreme Court noted in *Riley v. California*, "[a] search of the information on a cell phone bears little resemblance to the . . . brief physical search" of a container found on an arrestee's person. 134 S. Ct. 2473, 2485 (2014). Namely, modern cell phones—as a "particular category of effects" subject to Fourth Amendment protection, *id.* at 2485— "implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 2488-89. "Indeed, a cell phone search would typically expose to the government far more than the most exhaustive search of a house." *Id.* at 2491 (emphasis removed). In view of these privacy concerns, the *Riley* Court concluded that "officers must generally secure a warrant" before searching a cell phone. *Id.* at 2485.

[13]     Recently, the United States Supreme Court addressed similar privacy concerns in deciding *Carpenter v. United States*, No. 16-402, 585 U.S. \_\_\_\_, 2018 WL 3073916 (June 22, 2018). There, law enforcement had obtained, without a warrant, location-related data from an individual's wireless carrier's cell-site record that the cell phone had logged "by dint of its operation." *Id.* at *12. The Court rejected arguments that the information was rendered less private

because it was part of business records or because, by using the phone, the individual had technically disclosed the location information to the wireless carrier. *Id.* at *11-12. The Court reflected on the "unique nature of cell phone location records," *id.* at *9, and ultimately concluded "that the Government must generally obtain a warrant supported by probable cause before acquiring such records," *id.* at * 13.

[14] Here, unlike in *Riley* and *Carpenter*, the police secured a warrant before searching the cell phone data. Thus, we must look beyond these cases to resolve the issue Carter presents—which is whether the warrant was defective, rendering the evidence unconstitutionally obtained and, thereby, inadmissible.

## Probable Cause

[15] As an initial matter, for a valid warrant to issue, the police must first set forth probable cause to conduct the search.[6] U.S. Const. amend. IV; Ind. Const. art. 1, § 11; I.C. §§ 35-33-5-2, -8 (codifying constitutional principles and establishing requirements for affidavits or other testimony in support of search warrants). Probable cause is a "fluid concept incapable of precise definition . . . [and] is to be decided based on the facts of each case." *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997). In determining whether a police affidavit sets forth probable cause "to issue a search warrant, '[t]he task of the issuing magistrate is simply to make

---

[6] At oral argument, Carter conceded that there was probable cause to issue a search warrant. However, we must engage in some discussion of probable cause, as the topic informs other aspects of our analysis.

a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Spillers*, 847 N.E.2d 949, 952-53 (Ind. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).[7] Put differently, the central question in a probable cause determination is whether the affidavit presents facts, together with reasonable inferences, demonstrating a sufficient nexus between the suspected criminal activity and the specific place to be searched. *See Eaton v. State*, 889 N.E.2d 297, 300 (Ind. 2008); *Figert*, 686 N.E.2d at 830 (determining that a warrant to search a residence was not supported by probable cause where the underlying affidavit indicated that drug sales occurred in two residences that were merely nearby the residence to be searched, and that unidentified individuals had frequented all three residences).

[16] Here, law enforcement sought a warrant to search the cell phone for evidence of the crime of dealing methamphetamine. As to suspected criminal activity, the affiant stated that the police found a baggie inside Carter's co-owned vehicle that contained a substance field-tested to be methamphetamine, with a field weight of 207 grams. The affiant also stated that, based on training and experience, methamphetamine is typically purchased in one-gram quantities,

---

[7] Upon a challenge to whether probable cause supported the issuance of a search warrant, "[t]he duty of the reviewing court is to determine whether the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* at 953 (quoting *Gates*, 462 U.S. at 238-39). There is a substantial basis when "reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Jackson v. State*, 908 N.E.2d 1140, 1142 (Ind. 2009). Appellate courts review *de novo* whether a substantial basis supported the determination of probable cause, *Spillers*, 847 N.E.2d at 953, while affording deference to the magistrate's decision to issue the warrant. *McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018).

and that the quantity in the vehicle was consistent with dealing activity. The affiant further stated that another baggie in the vehicle contained an amount of heroin consistent with drug dealing. As to the cell phone, the affidavit stated that the phone was recovered from Carter, and that those involved in drug activity primarily use cell phones and electronic devices to communicate with one another through calls, text messages, and applications such as Facebook.

[17] In *Eaton*, law enforcement had obtained evidence that the defendant was involved in drug-trafficking activity taking place at a muffler shop. 889 N.E.2d at 299. In the affidavit in support of a search warrant for the defendant's home, the affiant set forth factual background regarding the defendant's connection to the drug trafficking. *Id.* The affiant also "stated that drug traffickers commonly keep U.S. currency within quick access and maintain records in a variety of forms including ledgers, computers, cell phones, pagers, phone bills, and wire transfer receipts." *Id.* at 300 (internal quotation marks omitted). It does not appear that the affiant specifically stated that drug traffickers typically kept such records at their residences. *See id.* Nonetheless, in resolving *Eaton*, our supreme court upheld the underlying probable cause determination, concluding that the affidavit presented "facts showing that the defendant was involved in drug trafficking" along with "facts and reasonable inferences establishing a fair probability that records and equipment related to such drug trafficking were likely to be found in the defendant's home." *Id.* In so concluding, the Court observed that "other courts ha[d] recognized that it is reasonable to believe that drug dealers keep evidence of their activities in their residences." *Id.*

[18] Examining the instant case in light of *Eaton*, here, the supporting affidavit even more directly set forth the nexus between the asserted criminal activity—dealing methamphetamine—and the place to be searched—the cell phone, through which dealers typically communicate concerning their illegal activity. Thus, the affidavit provided a substantial basis for determining that probable cause existed to support the issuance of a warrant to search the phone. Yet, underlying probable cause is not the only facet of a constitutional warrant.

## Particularity

[19] In addition to requiring probable cause, both the United States Constitution and the Indiana Constitution provide that a warrant must contain a particular description of the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; Ind. Const. art. 1, § 11. This particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Indeed, the requirement aims to prevent "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

[20] Although the warrant must describe "with some specificity" where officers are to search and what they are to seize, "there is no requirement that there be an exact description." *Overstreet v. State*, 783 N.E.2d 1140, 1158 (Ind. 2003). Nonetheless, the warrant must be specific enough so that officers can, "with reasonable effort," ascertain the place to be searched and the items to be seized.

*Steele v. United States*, 267 U.S. 498, 503 (1925). This requirement "prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 198 (1927); *see also Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016) (observing that a sufficient description avoids giving the police unbridled discretion). Ultimately, the description in a search warrant should "'be as particular as circumstances permit.'" *State v. Foy*, 862 N.E.2d 1219, 1227 (Ind. Ct. App. 2007) (quoting *United States v. Lievertz*, 247 F. Supp. 2d 1052, 1062 (S.D. Ind. 2002)). Moreover, to satisfy the particularity requirement, it is permissible if a warrant incorporates by reference certain supporting documents—such as the probable cause affidavit—that collectively "serv[e] to identify the scope of . . . items that could properly be seized." *Membres v. State*, 889 N.E.2d 265, 276 (Ind. 2008).

[21] Here, the warrant authorized searching the phone for:

> fruits, instrumentalities and evidence pertaining to the crime(s) of DEALING, POSSESSION and/or CONSPIRACY TO COMMIT DEALING OR POSSESSION OF METHAMPHETAMINE, as more particularly described as follows: [] Permission to search the above described phone for any information relating to calls, messages, including Facebook messages and accounts**, and all information** including but not limited to photographs, images, emails, letters, applications, and folders as well as any messages that may be stored on the phone **that would indicate the identity of the phone's owner/user** and permission to view and copy said information if deemed necessary for preservation.

Pre-trial Hearing Exhibit 1 (emphasis added).

[22]   Carter asserts that the warrant authorized a broad search of his device for all information that might supply indicia of ownership, rendering the warrant an impermissible general warrant. Carter points out that the police extracted "all the information on the cell phone," thereby generating "a document of roughly a thousand pages, which was then analyzed for criminal activity." Appellant's Br. at 16-17. Directing our attention to the privacy concerns articulated in *Riley*, Carter essentially argues that a warrant is unconstitutionally general where it permits law enforcement to review all the information on a cell phone to look for indicia of identity of the phone's owner.[8]

[23]   However, the warrant specifically described the place law enforcement could search—the phone recovered from Carter—and specifically described what law enforcement could search for—(1) "any information relating to calls, messages, including Facebook messages and accounts," and (2) "all information . . . that would indicate the identity of the phone's owner/user." Pre-trial Hearing Exhibit 1. Moreover, the first clause permitting the search for calls and messages enjoys a close nexus to the probable cause that justified issuing the search warrant—which is that Carter was a suspected drug dealer, and drug

---

[8] Carter also relies on *Ogburn v. State*, 53 N.E.3d 464 (Ind. Ct. App. 2016), *trans. denied*, but that case did not involve an insufficiently particular search warrant. Rather, in *Ogburn*, this Court determined that a warrant was not supported by probable cause and that, in the alternative, the ensuing search "clearly exceeded the scope of the warrant." 53 N.E.3d at 474. To the extent *Ogburn* comments on particularity, we regard its statements as dicta. *See Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 443 (Ind. 1990) ("[S]tatements not necessary in the determination of the issues presented . . . are not binding and do not become the law.").

dealers use cell phones to communicate with others involved in illicit drug activity. *See Eaton*, 889 N.E.2d at 300. Thus, this aspect of the search warrant was "tailored to its justifications." *Maryland*, 480 U.S. at 84.

[24] In carrying out the search, law enforcement did extract more than one thousand pages of information using a "logical extraction" device that created an "auto generated" report of the file architecture on the phone. Tr. Vol. IV at 142-43. Although Carter draws our attention to the quantity of data extracted, he has not demonstrated that there was any other way to practically conduct the permitted search. As the State observes, "[a] great deal of other information will likely have to be sifted through in order to find the relevant information— similar to looking through drawers in a home or office file cabinet for specific files or letters that are relevant to the investigation." Appellee's Br. at 15. Ultimately, we discern no indication that law enforcement had the ability to determine, *ex ante*, that certain pages could not have contained any of the information sought. *See United States v. Stabile*, 633 F.3d 219, 238 (3d Cir. 2011) ("'[A] computer search may be as extensive as reasonably required to locate the items described in the warrant' based on probable cause." (quoting *United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006)); *Wheeler v. State*, 135 A.3d 282, 301 (Del. 2016) ("Some irrelevant files may have to be at least cursorily perused to determine whether they are within the authorized search ambit.").

[25] With respect to Carter's assertion that the second clause was impermissibly general—that is, the clause permitting a search for all indicia of ownership of the phone—the challenged evidence consisted only of text messages. Assuming

*arguendo* that the second clause was insufficiently particular, even where a portion of a search warrant is too general, the Indiana Supreme Court has explained that "[t]he infirmity . . . does not doom the entire warrant." *Warren v. State*, 760 N.E.2d 608, 610 (Ind. 2002). Rather, the infirmity requires "only . . . suppression of the evidence seized pursuant to that part of the warrant but not the suppression of the evidence obtained pursuant to the valid specific portions of the warrant." *Id.* (citing *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) and *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984)); *see also United States v. Galpin*, 720 F.3d 436, 448-50 (2d Cir. 2013). Here, the challenged text messages were seized pursuant to the other, specific portion of the warrant that authorized searching the phone for messages.[9]

[26] Based on the foregoing, we conclude that the challenged text messages were not seized pursuant to an impermissible general warrant. Therefore, the court did not abuse its discretion by admitting the text messages over Carter's objection.

# Reasonableness

[27] Carter briefly argues that the search was unreasonable under Article 1, Section 11 of the Indiana Constitution. Under the Indiana Constitution, the legality of

---

[9] At oral argument, there was some discussion about the possibility of officers coming across evidence of a different crime while combing through electronic files pursuant to a warrant. Because the case before us does not present such facts, our opinion does not extend to that hypothetical situation. *See Snyder v. King*, 958 N.E.2d 764, 786 (Ind. 2011) (observing that courts should decide cases "only on the specific facts of the particular case and not on hypothetical situations"). Nonetheless, we expect that existing caselaw provides ample analogues should this issue arise in the electronic context. *See, e.g.*, *Overstreet*, 783 N.E.2d at 1160 (determining that the plain view doctrine permitted the seizure of evidence that officers came across while carrying out a valid search warrant).

a search "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). In evaluating the reasonableness of a search, we balance three factors: (1) the degree of suspicion of unlawful activity; (2) the degree of intrusion the method of the search imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361.

[28] Here, the search did not greatly intrude upon Carter's activities. Nonetheless, the search was intrusive in nature, as it involved searching a personal cell phone—a device that often contains highly personal information. However, law enforcement had located contraband in Carter's vehicle—specifically, a quantity of methamphetamine with a street value around $20,000 and a quantity of heroin with a street value between $9,000 and $12,000. Thus, law enforcement had a high degree of suspicion of unlawful activity. Furthermore, searching the phone advanced law enforcement needs related to identifying drug-dealing activity and protecting the community from the hazards of methamphetamine and heroin. On balance, we conclude that the search was reasonable under the totality of the circumstances.

## Opinion Testimony

[29] Carter argues that the trial court abused its discretion by admitting testimony from Detective Budde, who opined that the quantity of heroin seized was "typical of a dealer amount." Tr. Vol. IV at 224. Because Carter failed to raise a contemporaneous objection, Carter's only available argument with respect to

admission of the testimony is that the admission constituted fundamental error.[10]  *See, e.g.*, *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).  Yet, Carter declined to argue fundamental error, despite the opportunity to do so.[11]  Thus, Carter has waived any fundamental-error argument.  *See Ferguson v. State*, 40 N.E.3d 954, 957 (Ind. Ct. App. 2015), *trans. denied*.  Waiver notwithstanding, Carter argues that Detective Budde's testimony was inadmissible because it was inaccurate and contrary to law.[12]  To the extent Carter's argument involves statutory interpretation, we interpret statutes *de novo*.  *Johnson v. State*, 87 N.E.3d 471, 472 (Ind. 2017).

[30]  Carter directs us to Indiana Code Section 35-48-4-1(a)(2), which criminalizes the possession of heroin with the intent to deliver the drug.  Under the statutory framework, an individual can be convicted of dealing under either of two circumstances: (1) if the amount possessed is at least twenty-eight grams or (2) "there is evidence in addition to the weight of the drug that the person intended to . . . deliver . . . the drug."  I.C. § 35-48-4-1(b).  Here, the amount of heroin

---

[10] In his Appellant's Brief, Carter states that the evidence was admitted over his objection.  However, the record indicates that no objection was made at the time the evidence was admitted, and it does not appear that the trial court entered a continuing objection that would have preserved the issue.  *See, e.g.*, *Kindred v. State*, 524 N.E.2d 279, 292 (Ind. 1988).

[11] In its brief, the State pointed out that Carter had failed to raise a contemporaneous objection and had not argued fundamental error on appeal.  Thereafter, Carter did not argue fundamental error in his Reply Brief.

[12] In a footnote, Carter briefly asserts that Detective Budde was not qualified to give opinion testimony as a skilled witness pursuant to Indiana Evidence Rule 701.  At oral argument, however, Carter conceded that Detective Budde was qualified to give the opinion testimony, but maintained that the legislature preempted the particular type of opinion testimony due to the framework of the statute at issue.

was less than twenty-eight grams, and so a conviction required additional evidence of Carter's intent to deliver the heroin. *See id.*

[31] According to Carter, the very existence of the twenty-eight-gram presumption precludes the admission of testimony indicating that less heroin could constitute a "dealer quantity" of heroin. He argues that "[t]he legislature has made a decision about the quantity of drug which may be interpreted as presumptive of dealing, and the officer has rendered an opinion that is contrary to what the legislature found." Reply Br. at 6. However, we conclude that the statute does not operate to bar admission of probative evidence related to the defendant's intent to deal the drug. Rather, the statute eliminates the State's burden of presenting additional intent evidence when there is evidence that the drug weighed at least twenty-eight grams. Put another way, once the State has introduced evidence that the defendant possessed the statutory amount, there is sufficient evidence to establish the defendant's intent to deliver the drug. Yet, the State is not foreclosed from presenting additional evidence of intent, and the statutory framework does not otherwise affect the admissibility of evidence of intent where, as here, the quantity possessed is less than twenty-eight grams.[13]

---

[13] Moreover, it is not as though the weight and weight-based opinion testimony constituted the only evidence indicative of Carter's intent to deliver the heroin. Rather, the evidence indicated that Carter possessed multiple types of drugs with a collective street value around $30,000, and that he had met with several individuals prior to the traffic stop, at one point instructing an individual to covertly pull behind his vehicle.

[32] Thus, we conclude that the trial court did not err by admitting the challenged testimony.

# Conclusion

[33] The court did not abuse its discretion by admitting text messages procured from the search of Carter's cell phone; the search was conducted pursuant to a valid search warrant and the search was reasonable under the totality of the circumstances. The court did not err in admitting Detective Budde's testimony.

[34] Affirmed.

Najam, J., and May, J., concur.