

IN THE

# Court of Appeals of Indiana

Martell Jevon Flippins,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 21 2025, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

August 21, 2025

Court of Appeals Case No.
24A-CR-2210

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez, Judge

Trial Court Cause No.
45G01-2304-MR-19

---

**Opinion by Judge Foley**
Judges Mathias and Felix concur.

**Foley, Judge.**

[1] Martell Jevon Flippins ("Flippins") was convicted after a jury trial of murder,[1] a felony, and was found to have used a firearm in the commission of the crime as a sentence enhancement.[2] The trial court sentenced Flippins to sixty years for murder, enhanced by ten years for an aggregate sentence of seventy years executed. On appeal, Flippins raises one issue for our review, whether the trial court abused its discretion in admitting evidence seized from Flippins's cell phone and Facebook account pursuant to a search warrant because he asserts that the warrant was not supported by probable cause. We affirm.

## Facts and Procedural History

[2] On March 12, 2023, at approximately 3:15 a.m.,[3] police were dispatched to 5060 Broadway in Gary, Indiana, which was the address for Fatso's Nightclub, regarding an assault with a firearm. When the officers arrived, they found a man named Pierre Patterson ("Patterson") lying in the center median of the road in the front of the nightclub. Patterson was transported to the hospital where he was pronounced deceased, and an autopsy later revealed that Patterson had been struck by six bullets in the buttocks and leg, with one bullet

---

[1] Ind. Code § 35-42-1-1(1).

[2] I.C. § 35-50-2-11(d).

[3] Daylight savings time went into effect on March 12, 2023, at 2:00 a.m. Therefore, while the shooting would have otherwise taken place just after 2:00 a.m., the shooting instead occurred just after 3:00 a.m.

traveling through his pancreas, spleen, and lung, causing fatal damage. Patterson's death was ruled a homicide caused by multiple gunshot wounds.

[3] In investigating the scene, officers recovered eighteen fired bullet casings, a fired bullet, and bullet fragments from the area where Patterson was found on Broadway. Additional bullet fragments were found in two parked cars and bullet holes were discovered in the windows of nearby businesses. As part of the investigation, the officers collected surveillance footage from local businesses. Surveillance video from the Fly Nation Bar at 5004 Broadway showed Patterson walking onto Broadway at 3:12 a.m.[4] As Patterson crossed the street, an SUV that had been parked on the side of the street began to pull out without its headlights on. As the SUV approached Patterson, muzzle flashes were visible from the SUV's windows as it pulled alongside Patterson, who then fell to the ground. The SUV then sped away with its headlights off.

[4] Using videos obtained from multiple locations, including the Fly Nation Bar, three gas stations, a second bar, an insurance company, and Gary's Flock camera system[5], the police re-created the SUV's path prior to the shooting. The videos revealed the SUV to be a green Chevrolet Equinox with no license plate but with what appeared to be a dealer's sticker on the bottom left-hand corner

---

[4] The timestamp on the video identified the time as 2:12 a.m. However, due to daylight savings time taking effect at 2:00 a.m. that day, the timestamp was about an hour behind.

[5] Flock is a camera system consisting of approximately seventy stationary cameras in the City of Gary that operates as a license plate recognition system by taking photographs of vehicles and their license plates.

of the liftgate. The surveillance footage showed the SUV had first been recorded at the 3500 block of Broadway and Ridge Road, traveled approximately fifteen blocks to 5060 Broadway, made several passes past the Fly Nation Bar, then parked with its headlights off on the east side of Broadway, facing northbound, for approximately an hour and a half before the shooting. After the shooting, the SUV traveled northbound on Broadway with its lights off before turning eastbound on East 49th Avenue.

[5] In their attempt to identify the SUV's owner and a potential motive for the shooting, officers investigated Patterson's connection to a previous homicide. At the time of his death, Patterson had been under investigation for the murder of Lavell Hughes ("Hughes") on March 6, 2022. Officers examined the public portion of Hughes's Facebook account and discovered that Flippins, using the name "Martell Sancho Flippins," had significant involvement on Hughes's page. Tr. Vol. 5 p. 55. Hughes was Flippins's half-brother.

[6] When officers ran Flippins's name through a police database, they discovered he owned a green 2018 Chevrolet Equinox ("the Equinox"). Police determined that the dealership from which Flippins purchased the Equinox placed stickers on the bottom left-hand corner of the liftgates of their SUVs, consistent with the sticker observed on the SUV in the surveillance footage. The police then initiated surveillance of Flippins's workplace, which was in Illinois, and observed a green Equinox in the parking lot. Cell phone location data obtained through a T-Mobile search warrant indicated that Flippins's phone was at his workplace when officers had observed the Equinox in the parking lot. Officers

also observed Flippins enter and exit the green Equinox on multiple occasions while at his workplace.

[7] On March 24, 2023, officers followed Flippins after he entered the Equinox and left his workplace, driving away at speeds of up to eighty miles per hour. Flippins eventually turned into an apartment complex parking lot in Lansing, Illinois, and when officers arrived, Flippins was gone but the green Equinox remained in the parking lot. Officers seized and searched the Equinox pursuant to a search warrant. Inside the Equinox, police found the SUV's registration, temporary plates, and mail addressed to Flippins at an address on Vermont Street in Gary, Indiana, which was discovered to be Flippins's mother's home. Additionally, a fired .40-caliber bullet casing was found in the windshield wiper cowl of the Equinox.

[8] In examining the T-Mobile records for Flippins's phone, the police learned that, on March 11, 2023—the day before the shooting—the phone was in the vicinity of Flippins's workplace in Illinois until approximately 5:30 p.m. Between 11:20 p.m. and 11:25 p.m., Flippins received an incoming call while traveling in the Gary area, with an outgoing call twenty minutes later showing the phone's location in the area of Broadway and Ridge Road in Gary. The timing advance data from Flippins's cell phone placed him at various locations throughout the early morning hours of March 12, 2023: at 12:37 a.m., in the area of Broadway and Ridge Road; at 12:40 a.m., in the area of 5060 Broadway; from 1:00 to 3:14 a.m., in an area south of 5060 Broadway; and at 3:15 a.m., in an area north of

5060 Broadway. An outgoing call was placed at 3:16 a.m., placing the phone in an area encompassing 5060 Broadway.

[9] On April 3, 2023, the State charged Flippins with murder and Level 4 felony possession of a firearm by a serious violent felon and alleged a firearm enhancement. On April 13, 2023, Flippins was arrested at his home in Chicago, Illinois and extradited to Indiana. At the time of his arrest, two cell phones, an iPhone 11 ("the iPhone") and a Motorola, were seized from his person. Following Flippins's arrest, the police obtained search warrants for the iPhone seized from Flippins[6] and for Flippins's Facebook account. The iPhone search warrant sought data for the time period from March 1, 2022, to April 13, 2023. The Facebook search warrant sought records for the time period from March 6, 2022, to March 31, 2023.

[10] The data extracted from the iPhone revealed several significant text messages from the night of the murder. At 12:53 a.m., Flippins texted an individual with the username "babyblitz" stating, "[t]hey not at fly nation they at the one down the street." Ex. Vol. 1 p. 230. At 1:12 a.m. and 1:13 a.m., Flippins texted someone named Dwight, "Man [I] need sum [sic] hot wheels," and "Im [sic] sitting on this ni**a but I'm in my shit." *Id*. at 230–31. At trial, one of the detectives who investigated the case testified that "hot wheels" typically refers to a stolen vehicle. Tr. Vol. 5 p. 229. At 3:22 a.m., Flippins received an

---

[6] A search warrant was also obtained for the Motorola cell phone, but the police were unable to access the phone's data.

incoming text from "babyblitz" that contained a video of Patterson dead in the street.

[11] The search of Flippins's Facebook account revealed that the account contained a screenshot of a Facebook post made by Patterson. In this post, Patterson referred to the murder of Flippins's half-brother Hughes, stating, "Iknew [sic] his a$$ was hit he was crawling all onna [sic] floor when I look back." Ex. Vol. 1 p. 32. On January 29, 2023, Flippins shared the screenshot and wrote, "I swear imma [sic] cut this bitch ass ni**a head off." *Id.* at 33.

[12] Officers also executed a search warrant on Flippins's mother's home on Vermont Street in Gary, Indiana. Although Flippins did not live at this address, mail addressed to him at that address had been recovered from his vehicle, and text messages showed he had been at the home the night before the shooting. The search yielded from the kitchen a .40-caliber Smith and Wesson handgun with a chambered round, along with various unspent cartridges found in three upstairs bedrooms and the kitchen, including .357 caliber, .40 caliber, and 7.62x39 caliber rounds. Ballistics analysis of the evidence revealed that between two and four firearms had been used in the shooting. The fired .40-caliber casing found on the cowl of Flippins's Equinox was determined to have been fired by the same firearm as two spent .40-caliber casings found on Broadway after the murder. However, the .40-caliber Smith and Wesson handgun recovered from Vermont Street could neither be identified nor excluded as having fired the casings from the scene.

[13] Flippins filed multiple motions to suppress evidence, including motions concerning the search warrants for data extraction from the iPhone and his Facebook records. In the motions, he argued that the evidence from both the iPhone and his Facebook account should be suppressed because there was insufficient probable cause for the issuance of the warrants. A hearing on these motions was held on April 10, 2024, and following briefing by the parties, the trial court denied the motions on June 18, 2024.

[14] A jury trial was held from June 24, 2024, to June 28, 2024. At trial, Flippins raised an alibi defense through the testimony of Blaine Thomas ("Thomas"), who had known Flippins for over twenty years and had both a platonic and intimate relationship with him. Thomas claimed that Flippins was at her home throughout the time of the shooting. Thomas testified that on March 11, 2023, Flippins came to her house around 11:30 p.m., and after they talked for a period of time, she went to sleep around 12:00 a.m. and 1:30 a.m. She further testified that, when she woke up at 8:00 a.m., Flippins was at her home. Thomas stated that Flippins's Equinox was not outside when she left her home to drive to church at 10:00 a.m. However, while Flippins was in jail awaiting trial, he sent Thomas a letter written in cipher instructing her on what to say to support his alibi, including that he did not have the Equinox with him the night of the murder. Additionally, text message data from the iPhone showed that Flippins and Thomas were texting each other from 10:00 p.m. on March 11, 2023, to 10:00 a.m. on March 12, 2023, in a manner suggesting they were not together during this time period.

During trial, Flippins objected to the admission of evidence resulting from the searches of the iPhone and his Facebook account, citing the arguments raised in his motions to suppress. The trial court overruled both objections. At the conclusion of the trial, the jury found Flippins guilty of murder, and the State dismissed the count of Level 4 felony unlawful possession of a firearm by a serious violent felon. A bench trial was held as to the firearm enhancement, and the trial court found that the State met its burden of proving that Flippins committed the crime by using a firearm. On August 16, 2024, Flippins was sentenced to an aggregate, executed sentence of seventy years—sixty years for murder enhanced by ten years for the firearm enhancement. Flippins now appeals.

## Discussion and Decision

Flippins argues that the trial court abused its discretion in admitting the evidence seized from the iPhone and his Facebook account because neither of the search warrants were supported by probable cause. Although Flippins filed motions to suppress the challenged evidence, because he now appeals following a completed trial, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the trial court. *Cox v. State*, 160 N.E.3d 557, 560 (Ind. Ct. App. 2020). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Bell v. State*, 81 N.E.3d 233, 236 (Ind. Ct. App. 2017),

*trans. denied.* We also consider the uncontested evidence favorable to the defendant. *Id.* However, "when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Guilmette v. State*, 14 N.E.3d 38, 40–41 (Ind. 2014).

[17] Flippins argues the search warrants for both the iPhone and his Facebook account were invalid because they were not supported by probable cause. For a valid warrant to issue, the police must first set forth probable cause to conduct the search. U.S. Const. amend. IV; Ind. Const. art. 1, § 11; Ind. Code § 35-33-5-2.[7] "Probable cause is a fluid concept incapable of precise definition and is to be decided based on the facts of each case." *Banks v. State*, 231 N.E.3d 853, 860 (Ind. Ct. App. 2024) (citing *Carter v. State*, 105 N.E.3d 1121, 1127 (Ind. Ct. App. 2018), *trans. denied*), *trans. denied*. In determining whether a police officer's affidavit sets forth probable cause to issue a search warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* "Put differently, the central question in a probable cause

---

[7] Although Flippins asserts that the search of the iPhone and his Facebook account violated his rights under both the Indiana and United States Constitutions, he provides no independent argument or analysis of his claim pursuant to the Indiana Constitution. Therefore, he has waived any contention under the Indiana Constitution. *See Hansbrough v. State,* 49 N.E.3d 1112, 1114 n.3 (Ind. Ct. App. 2016) (failure to provide independent analysis of Article 1, Section 11 results in waiver of the issue on appeal), *trans. denied*. We therefore address the Fourth Amendment only.

determination is whether the affidavit presents facts, together with reasonable inferences, demonstrating a sufficient nexus between the suspected criminal activity and the specific place to be searched." *Carter*, 105 N.E.3d at 1128 (citing *Eaton v. State*, 889 N.E.2d 297, 300 (Ind. 2008), *cert. denied*). "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant." *State v. Stone*, 151 N.E.3d 815, 818–19 (Ind. Ct. App. 2020) (quotations omitted), *trans. denied.*

[18] When a search warrant is sought for a cell phone, "the affidavit must allege more than just the fact that the person who is suspected of criminal activity has a cell phone." *Banks*, 231 N.E. 3d at 860. "[A]ffidavits that rely on the ubiquitous presence of cell phones and text messaging in daily life are insufficient to establish the required nexus," and "[i]nstead, there must be specific, not speculative, evidence linking the device in question to the criminal conduct." *Id.* (quotation omitted).

[19] Flippins asserts that the affidavit did not demonstrate a nexus between the iPhone and the murder and did not provide any specific indication of what additional evidence would come from the search of the iPhone. He contends that the affidavit relied on speculation by merely stating a belief that the iPhone could "contain information relating to other witnesses and co-conspirators," with no specification of when, or in what form, this communication occurred. Appellant's App. Vol. 2 p. 62. Flippins also argues that the search warrant for Flippins's private Facebook data lacked sufficient probable cause because the

affidavit did not establish any nexus between his Facebook account and Patterson's murder. He claims that the warrant sought private messaging data from his Facebook account but that there was "zero evidence or insinuation within the affidavit that Flippins' [sic] used the messaging component of Facebook," either near in time to the date of the shooting, or at any time beforehand. Appellant's Br. p. 17.

[20] In looking at the facts and reasonable inferences contained in the affidavits, the police sought a warrant to search the iPhone and Flippins's Facebook account for evidence of the crime of murder. The officer who submitted the affidavits explained that he investigated the murder of Patterson at 5060 Broadway that occurred on March 12, 2023. He explained how he had observed multiple spent bullet casings at the scene and that the videos from security cameras in the area had allowed officers to identify a green Equinox as having been used by the suspects of Patterson's murder during the shooting. The affidavits identified how Patterson had been suspected of killing Hughes almost a year prior on March 6, 2022, and how the police believed that Patterson's murder may have been retaliation for Hughes's murder. The affidavits then detailed how law enforcement had identified Flippins as a suspect since he was Hughes's half-brother, had made public posts on Facebook in reference to Hughes and his death, and was the registered owner of a green Equinox. In one of the public posts from April 22, 2022, about a month after Hughes was killed, Flippins posted, "Not one day goes by without me shedding tears ever since I got that call . . . can't wait to make mufuckas [sic] feel the way I do."

Appellant's App. Vol. 2 pp. 59, 81. Additionally, on March 13, 2023, the day after Patterson was murdered, Flippins posted a broken heart emoji with the words "LL Big Slab," which the police knew to mean "Long Live Big Slab," referring to Hughes by his nickname. *Id.*

[21] After determining that Flippins owned the Equinox, which was consistent with the one used in Patterson's murder, the police observed Flippins accessing and using the vehicle, including driving it to work. The affidavits set out how the police learned through information gained from the unchallenged search warrant for T-Mobile cell phone data belonging to Flippins's number that Flippins's cell phone was in the vicinity of 5060 Broadway prior to and during Patterson's murder. An analysis of the T-Mobile cell phone data indicated that Flippins had used his cell phone to make calls while in the area of 5060 Broadway immediately prior to Patterson's murder, indicating that Flippins was in the Equinox and using his phone prior to and around the time of Patterson's murder. During this time immediately prior to Patterson's murder, Flippins made two calls, totaling eighty-eight seconds in length.[8] The affidavits stated that these phone calls were pertinent because the Equinox can be "observed . . . outside of Fatso's Bar before the . . . Equinox approached and ambushed . . . Patterson, whereupon he is apparently shot from the driver's side of the vehicle." *Id.* at 61, 82. The iPhone affidavit also stated that cell phone

---

[8] The affidavits stated that Flippins had made two phone calls totaling eighty-eight minutes. Appellant's App. Vol. 2 p. 61, 82. However, the parties subsequently filed a stipulation that the two phone calls actually totaled eighty-eight seconds and not eighty-eight minutes. Appellant's App. Vol. 3 pp. 2–3.

location data showed that Flippins had gone to his mother's Vermont Street address before Patterson's murder and returned there shortly after the murder. Using the location data, the police also observed that, when Flippins was under surveillance, on the days he was at work, the location data confirmed his cell phone was also in the area. This fact indicated that Flippins carries the cell phone associated with that number on his person.

[22] The iPhone affidavit also contained information gleaned from the Equinox after it was seized and searched. The search uncovered a spent .40-caliber bullet casing and a receipt dated March 19, 2023, for a .40-caliber magazine. The iPhone affidavit stated that this indicated that Flippins owned a .40-caliber weapon, which caliber was among the ones recovered from the scene of the murder. When the detective questioned Flippins and asked him where he was the night of Patterson's murder, Flippins claimed to have been either at his mother's residence or at "some girl's house." *Id*. at 62. The iPhone affidavit also included information about items discovered after a search warrant was executed at Flippins's mother's home on Vermont Street, which included two .40-caliber handguns, .40-caliber cartridges, and several other caliber cartridges that were the same caliber as the casings found at the murder scene.

[23] In addition to this evidence that Flippins had participated in Patterson's murder, in the iPhone affidavit, the officer attested to his knowledge and experience about forensic examinations and how evidence of criminal activity is often stored on cell phones. The search warrant request included a specific date range, March 1, 2022, through April 12, 2023, related to the specific facts of the

investigation, commencing around the time of Hughes' murder and concluding shortly after Patterson's murder. The search warrant request also specifically described the types of files or data to be searched, and included evidence from Flippins's contacts, calls, photographs, audio and video files, text messages, emails, search history, and subscriber information. The affiant attested that he believed that the iPhone contained information that "tends to show whether or not [Flippins] murdered . . . Patterson" and "information relating to other witnesses and co-conspirators in this investigation." *Id*. at 62. It was believed, therefore, that the information contained on the iPhone would contain data and records of his communications, including social media or text messages, with other witnesses and co-conspirators at or around the time of the offense as well as other times.

[24] In addition to the evidence that Flippins had participated in Patterson's murder, in the affidavit for Flippins's Facebook account, the officer attested to his knowledge and experience about forensic examinations and how suspects in homicide investigations commonly utilize websites and social media platforms, such as Facebook, as a means of communication with other suspects and co-conspirators before and after the commission of the homicide. He requested permission to search Flippins's Facebook account between the dates of March 6, 2022, through March 31, 2023, which encompassed the time frame of when Hughes was murdered since that was the suspected motive for Flippins to murder Patterson, for evidence. The affidavit for the Facebook account also stated that "Flippins ha[d] been observed making numerous Facebook posts in

reference to . . . Hughes," and that the affiant believed that Flippins's "Facebook profile data will contain information tending to show whether or not . . . Flippins murdered . . . Patterson." *Id.* at 82.

[25] We find that the affidavits presented facts, together with reasonable inferences, demonstrating a sufficient nexus between both the iPhone and Flippins's Facebook account and Patterson's murder. Initially, the evidence established that it was very likely that Flippins had participated in Patterson's murder and that he was in possession of and using the iPhone prior to and after Patterson's murder and in the vicinity of where the murder occurred. Additionally, the affidavit contained evidence that Flippins had made several public Facebook posts regarding Hughes's death, of which Patterson was the suspected shooter. One of the public posts stated that he could not wait to make the people who killed Hughes feel the way Flippins did and another public post made the day after Patterson was murdered proclaimed long live Hughes, which supported an inference that Flippins was communicating that he had made those responsible for Hughes's murder "feel the way [he] d[id]." *Id.* at 59, 81. The evidence that Flippins was in possession and using the iPhone prior to and after Patterson's murder and that he used, and continued to use, Facebook to communicate with others about his criminal activity, coupled with the officer's observations and experience that people engaged in criminal conduct often use cell phones and social media to communicate with co-conspirators and accomplices, allowed for a reasonable inference that the iPhone and the Facebook account contained

information pertaining to Patterson's murder and possible co-conspirators or accomplices.

[26] Based on this evidence, we conclude that the affidavits established probable cause that the iPhone and Facebook account contained evidence and communications relevant to Patterson's murder. Even assuming the issue of probable cause was a close call, as noted above, doubtful cases are to be resolved in favor of upholding warrants. *Stone*, 151 N.E.3d at 818–19. Accordingly, we find that the search warrants were supported by probable cause. Therefore, the trial court did not abuse its discretion in admitting the evidence discovered as a result of the search warrants.

[27] Affirmed.

Mathias, J. and Felix, J., concur.

ATTORNEY FOR APPELLANT

Sean C. Mullins
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana